**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DOLORES COLE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 11 C 7001** |
| | ) | |
| **ILLINOIS TOOL WORKS, INC.,** | ) | **Magistrate Judge Finnegan** |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Dolores Cole has filed suit alleging that Defendant Paslode, a division of

Illinois Tool Works, Inc., terminated her employment because of her age in violation of

the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Plaintiff

also claims that Defendant retaliated against her for making complaints of age and race

discrimination under the ADEA and Title VII of the Civil Rights Act of 1964 ("Title VII"),

42 U.S.C. § 2000e *et seq.* The parties have consented to the jurisdiction of the United

States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and Defendant now moves for

summary judgment on all of Plaintiff's claims. For the reasons set forth here, the motion

is granted in part and denied in part.

## BACKGROUND[1]

Paslode is a manufacturer of cordless and pneumatic nailers, staplers, and

fasteners used by professional contractors. (Doc. 26 ¶ 2). From 1990 until November

2007, Plaintiff (born May 14, 1955) worked as a salaried Customer Service Manager for

---

[1]   Despite the fact that this is an age discrimination case, the parties have not provided the ages of several relevant individuals. For purposes of this motion, where an employee's age or date of birth is not set out in the text, the Court will assume that the person is under the age of 40.

Paslode's Service & Parts business. In that position, she supervised anywhere from one part-time to three full-time customer service representatives, and performed a variety of duties including answering phones, acting as a customer service representative, placing orders, writing reports, visiting customers and vendors, interfacing with manufacturers, and working on budgets. (*Id.* ¶ 5; Doc. 34 ¶ 5; Doc. 50 ¶ 2; Doc. 35-8). There is no dispute that Plaintiff generally performed her duties satisfactorily. (Doc. 34 ¶ 7; Doc. 50 ¶ 3).

Throughout most of her employment, Plaintiff reported to Parts Manager Wilfred Hildebrandt (born July 28, 1950). (Doc. 50 ¶ 4). At some point in 2007, however, she started reporting to Chris Mettler, Paslode's manager of product and customer services. Defendant maintains this supervisory change occurred in January 2007 (Mettler Aff., Doc. 27, Ex. A, ¶ 2; Doc. 26 ¶ 6; Doc. 50 ¶ 4); Plaintiff insists it was "mid-2007." (Doc. 34 ¶ 6; 2/26/07 Organizational Chart, Doc. 38; 7/30/07 Organizational Chart, Doc. 40; 6/5/2007 Salary Data Sheet, Doc. 61). In any event, there is no dispute that Mettler reported to Distribution Manager Toni Stark (born November 27, 1966). (Doc. 34 ¶ 6; Stark Dep., Doc. 29, at 5).

### A.  The Reduction in Force

Defendant claims that business started to decline in late 2006 "as part of a trend that would become a national economic recession." (Doc. 26 ¶ 8). In January 2007, Mark Boutelle, Group President of Illinois Tool Works ("ITW"), determined that Paslode needed to trim its workforce and cut costs to maintain profitability. He thus spoke with Mettler about "what could be eliminated and streamlined to allow the business to grow and continue to earn profits." (*Id.* ¶ 11; Mettler Aff. ¶ 6; Boutelle Aff., Doc. 27, Ex. B, ¶

8). That summer, at the request of Boutelle and Stark, Mettler developed a restructuring plan that called for, among other things, the elimination of Plaintiff's position. (Doc. 26 ¶¶ 12, 13). According to Mettler, the company did not need a separate customer service manager to oversee just two customer service representatives (Linda Mede and Lela Huff-Chanath (born September 11, 1956)). (*Id.* ¶ 14; Mettler Aff. ¶ 7; Doc. 34 ¶ 5; Doc. 34, Add'l Facts, ¶ 19). Mettler discussed the plan with Boutelle and Stark, and by August 2007 the reduction in force ("RIF") was underway. (Doc. 26 ¶¶ 15, 16). Specifically, in August and September 2007, Paslode circulated documents among certain managers showing the company's intent to eliminate Plaintiff's job. (*Id.* ¶ 16; 8/2/07 Business Restructure Overview, Doc. 30, Ex. I; Holley Dep., Doc. 30, Ex. E, at 122-24, 138-39).

Plaintiff denies that Paslode experienced any economic decline, noting Stark's deposition testimony that ITW was "doing okay" in late 2007, and that Paslode did not implement the restructuring due to budgetary issues or to save salary or benefit costs. (Stark Dep., Doc. 44, at 12-13). Plaintiff also disputes that Paslode actually thought her position was unnecessary or planned to eliminate it. She notes, for example, that while Paslode was working on the RIF, it was simultaneously considering creating a new National Customer Service Manager position and hiring two additional customer service representatives. (Doc. 51-1; Doc. 26 ¶ 33; Doc. 50 ¶ 27). In July and August 2007, Plaintiff exchanged email messages with Ollie Brewer, ITW's Human Resources Manager at the time, expressing interest in the position. (Doc. 30, Ex. M). Stark, however, declined to interview her, believing that she did not possess the requisite qualifications. (Doc. 34 ¶¶ 31, 34, 35; Doc. 30, Ex. N; Doc. 50 ¶¶ 28, 31). Defendant

admits these facts but stresses that the idea to create a new position was put "on hold" in October 2007, and that the company ultimately abandoned the plan. (Doc. 34 ¶ 36; Doc. 30, Ex. M).

**B.    Plaintiff's Discharge**

On October 1, 2007, Donna Holley, Paslode's Human Resources Director, emailed Michael Hamblen, ITW's Vice-President of Employee Relations, a list of positions and employees that would be affected by the restructuring, including Plaintiff's Customer Service Manager position. (Doc. 26 ¶ 17). According to Defendant, Stark and Boutelle ultimately approved the restructuring plan recommended by Mettler and eliminated Plaintiff's position as well as two others from Paslode's Service & Parts business.[2] (*Id.*). Mettler notified Plaintiff of this decision on November 7, 2007. (*Id.* ¶¶ 19, 20; Cole Dep., Doc. 28, at 8). At that time, Plaintiff had worked for Paslode for some 17 years and her salary had steadily increased to the point where it was 111% of the company's designated "midpoint" for her position. (Doc. 50 ¶¶ 2, 7; Holley Dep., Doc. 45, at 36-37). She was also participating in a defined benefit plan that was 100% funded by Paslode. (Doc. 50 ¶ 8; Holley Dep., Doc. 45, at 154).

Plaintiff of course believes that she should not have been selected for termination. More importantly, she believes that contrary to Defendant's assertion, it was Stark, and not Mettler, who made the decision to discharge her. (Doc. 25, at 9; Doc. 34, Add'l Facts ¶¶ 10, 11). This distinction is significant, Plaintiff posits, because she has evidence that Stark did not like her and thought she was overpaid. Specifically, Plaintiff testified at her deposition that Hildebrandt told her "[o]n numerous occasions"

---

[2]    All told, Paslode terminated 17 employees in the RIF, 10 of whom were over the age of 40. (Doc. 50 ¶ 30). All 17 appeared on Holley's October 1, 2007 list.

that Stark had said she thought Plaintiff was "overcompensated compared to the other customer service managers within the organization." (Cole Dep., Ex. 43, at 32-33). Hildebrandt further reported that Stark did not like Plaintiff, and that he had to struggle to get Plaintiff a merit increase in 2007 because Stark wanted him to rate her "more harshly" than he believed was appropriate. (*Id.* at 34, at 49-50; Doc. 34, Add'l Facts ¶¶ 5, 6, 13; Hildebrandt Aff., Doc. 35-12, ¶ 5). Brewer similarly recalls Stark discussing with him "[o]n several occasions" her concern about Plaintiff's "relatively high salary." (Brewer Aff. ¶ 5).

Stark denies that she complained about Plaintiff's salary, and has no recollection of talking with Hildebrandt about Plaintiff's years of service with the company. (Stark Dep., Doc. 29, Ex. D, at 77, 79). She also insists that she never told Hildebrandt she dislikes Plaintiff or made any disparaging remarks about her. (*Id.* at 92). As for the 2007 review, Stark testified that her standard practice is to ask managers to explain how they have rated an employee if it is not clear from the statements in the review. (Stark Dep., Doc. 49-2, Ex. 6, at 93; Doc. 50 ¶ 13). In his affidavit, however, Hildebrandt maintains that Stark went much further, insisting that he re-write certain portions of his review "to reflect dissatisfaction with job performance," which resulted in Plaintiff receiving a smaller raise. (Hildebrandt Aff., Doc. 35-12, ¶ 5; Doc. 34, Add'l Facts, ¶ 13).

### C. Paslode's Alleged Search for a New Customer Service Manager

After Plaintiff's termination, Mettler personally assumed some of her job duties and had the two customer service representatives report directly to him for some period of time. (Doc. 26 ¶¶ 28, 29). According to Plaintiff, however, Mettler had other plans for the department. Immediately after she was discharged, Mettler approached Ollie

Brewer seeking approval to post an opening for a customer service supervisory position. Brewer says he told Mettler this was not feasible because Plaintiff "could have capably performed such a position." When Brewer met with both Mettler and Holley approximately one week later, however, "they decided to post a position for a new customer service position with the intent that the new hire would later be promoted to a supervisory position." According to Brewer, "[a]n offer was extended to a young Caucasian male whose name I don't recall, although that individual declined the offer." (Brewer Aff., Doc. 35-13, ¶ 6; Doc. 34 ¶ 11; Doc. 34, Add'l Facts, ¶ 20).

Defendant denies this ever happened and claims that Brewer, who was fired from the company in 2009 and filed his own discrimination charges, could not provide even the barest supporting details at his deposition. (Doc. 50 ¶¶ 20, 25; Brewer Aff., Doc. 35-13, ¶ 8). For example, Brewer could not recall the title of the position or the name of the "young guy" "from Wisconsin" who allegedly received the offer. (Brewer Dep., Doc. 49-1, at 172, 177, 183). Nor could he remember how long after Plaintiff's termination Mettler sought approval for the position, guessing anywhere from two to three, or possibly six months, but definitely less than one year. (*Id.* at 152-53).

### D. Plaintiff's Complaints of Discrimination

With respect to Plaintiff's retaliation claim, she identifies two complaints of discrimination she made prior to her termination.[3] The first was in April 2007, when she says she made oral complaints of age discrimination to some unidentified person. Plaintiff could not recall at her deposition any specific details of the alleged complaint,

---

[3] A third complaint from 1993 is too remote in time to be relevant to this case. (Doc. 35-2). *See Abuelyaman v. Illinois State Univ.*, No. 07-1151, 2009 WL 3837012, at *7 (C.D. Ill. Nov. 13, 2009) (quoting *Mullin v. Gettinger*, 450 F.3d 280, 284 (7th Cir. 2006) ("A plaintiff may demonstrate improper motive with evidence that an adverse employment action took place on the heels of protected activity.")).

but testified she "probably said . . . I see people who have been here many years and have contributed to the success of this organization who are being pushed aside because of age for younger people." (Cole Dep., Doc. 43, at 246, 249). The only person Plaintiff identified as having been "pushed aside" is Hildebrandt. (*Id.* ¶ 250).

In addition to her testimony, Plaintiff also points to her own handwritten notes indicating that she spoke to Hildebrandt about a "hostile workplace" relating to "age, race" in or around April 2007. (Doc. 35-5). Hildebrandt's affidavit does not say anything about such a complaint, but Plaintiff's notes reflect that he agreed to speak with "HR" and "Ollie" Brewer. (Hildebrandt Aff., Doc. 35-12; Doc. 35-5). The notes also indicate that Plaintiff spoke with Brewer in March 2007, at which time he "told me my statement of a hostile workplace is not true." (Doc. 35-5). In his affidavit, Brewer confirms that sometime in 2007, Plaintiff "raised concerns internally of what she believed to be discrimination in the workplace," including an "informal" complaint that she felt "discriminated against by Chris Mettler, in that Mettler would not speak to her." (Brewer Aff., Doc. 35-13, ¶ 3). At his subsequent deposition, Brewer clarified that Plaintiff never actually mentioned age, race or any other protected class, and that he himself did not think that Mettler's refusal to talk to her constituted discrimination. (Brewer Dep., Doc. 49-1, at 93). Indeed, he determined that the company did not need to conduct an investigation as it would for a discrimination complaint, and when he relayed the complaint to Holley and discussed it with Mettler, he did not characterize it as involving "discrimination." (*Id.* at 24, 26-27, 96, 98, 100). Moreover, Plaintiff told Brewer that things were better with Mettler after Brewer spoke with him. (*Id.* at 100).

Plaintiff next complained of age, race, sex and disability discrimination on October 18, 2007, when she filed a charge of discrimination with the Equal Employment Opportunity Commission based on Defendant's failure to hire her into the National Customer Service Manager position.  (Doc. 26 ¶ 37; Doc. 34, Add'l Facts ¶ 23; Doc. 35-8).  Plaintiff admits that no one at Paslode made any derogatory comments about her or her age after she filed the charge.  (Doc. 34 ¶ 38).  The parties also agree that Holley learned of the charge around the time Plaintiff filed it, and that, as noted earlier, the RIF took place later in November 2007.  (Doc. 50 ¶ 36).

### E.    Plaintiff's Lawsuit

Plaintiff has now filed suit alleging that Paslode fired her because of her age, and retaliated against her for complaining about age and race discrimination.  Defendant denies these allegations and insists that Plaintiff was discharged for economic reasons before any of the relevant decision makers knew she had complained of discrimination.

## DISCUSSION

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  *See also Davis v. Time Warner Cable of Southeastern Wisconsin, L.P.*, 651 F.3d 664, 671 (7th Cir. 2011).  A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).  In ruling on a motion for summary judgment, "[a] court's role is not to evaluate the weight of the evidence, to judge credibility of witnesses, or to determine the

truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *National Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). "To survive summary judgment, the nonmovant must produce sufficient admissible evidence, taken in the light most favorable to it, to return a verdict in its favor." *Fleishman v. Continental Cas. Co.*, 698 F.3d 598, 603 (7th Cir. 2012).

## A.    Age Discrimination Claim

The ADEA prohibits employers from, among other things, "discharg[ing] any individual . . . because of such individual's age." *Van Antwerp v. City of Peoria, Ill.*, 627 F.3d 295, 297 (7th Cir. 2010) (quoting 29 U.S.C. § 623(a)(1)). To establish a violation of the ADEA, an employee must show that age "played a role in the employer's decision-making process and had a determinative influence on the outcome." *Id.* (citing *Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 573 (7th Cir. 2003)). An employee may make this showing using either the direct or indirect method of proof. *Id.*

Plaintiff does not claim to have direct evidence of discrimination and proceeds instead under the familiar indirect method set forth in *McDonnell Douglas.* This requires Plaintiff to establish a prima facie case of discrimination by showing that: (1) she is a member of the protected class; (2) she was performing well enough to meet her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) similarly situated, substantially younger employees were treated more favorably. *Fleishman*, 698 F.3d at 609; *Naik v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 627 F.3d 596, 599-600 (7th Cir. 2010). The burden then shifts to Defendant to offer a legitimate, nondiscriminatory reason for the adverse employment action. *Fleishman*, 698 F.3d at 609. If Defendant meets this burden, then Plaintiff must demonstrate that

the reasons offered were pretextual. *Id. See also Egonmwan v. Cook County Sheriff's Dep't*, 602 F.3d 845, 850 (7th Cir. 2010).

### 1.    Prima Facie Case – Similarly Situated Employees

Defendant does not dispute that Plaintiff can establish the first three prongs of her prima facie case:  she is over 40 years old; (2) she was performing well enough to meet Paslode's legitimate expectations; and (3) her discharge constitutes an adverse employment action.  *See* 29 U.S.C. § 631(a); *Barton v. Zimmer, Inc.*, 662 F.3d 448, 454-55 (7th Cir. 2011).  Defendant claims that Plaintiff's prima facie case fails at the fourth prong, however, because she has not identified any similarly situated, substantially younger employees who were treated more favorably.  "The purpose of the 'similarly situated' comparator element is to ensure that all other variables are discounted so that an inference of unlawful intent would be reasonable."  *Silverman v. Board of Educ. of City of Chicago*, 637 F.3d 729, 742 (7th Cir. 2011).  Comparators must therefore be "similar enough that any differences in their treatment cannot be attributed to other variables," such as "distinctions in positions, performance, or supervisors."  *Id.* (citing *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 366 (7th Cir. 2009)) (similarly situated employees must be "directly comparable to the plaintiff in all material aspects.").

Defendant contends that as Paslode's only salaried Customer Service Manager, Plaintiff was not similarly situated to the other two employees in the customer service department, Linda Mede and Lela Huff-Chanath, who were hourly representatives with no managerial responsibilities.  (Doc. 25, at 11).  Plaintiff responds by identifying some six other customer service employees who were not fired in the RIF:  Julie Gray, Rita

Lugo, Tina Norman, Ashley Mack, Eileen Marx, and Olga Kiyasova.  (Doc. 35, at 4).

Gray and Huff-Chanath are not proper comparators because they are both members of

the protected class and very close to Plaintiff's age.  Gray, born in January 1958, is less

than three years younger than Plaintiff (born in May 1955), and Huff-Chanath, born in

September 1956, is not even a year and a half younger than Plaintiff.  (Doc. 34 ¶ 19).

*See Runyon v. Applied Extrusion Techs., Inc.*, 619 F.3d 735, 740 (7th Cir. 2010) (for

purposes of the ADEA, "substantially younger" means "ten years or so.").

As for the other employees, neither party has indicated what specific positions

they held or to whom they reported.[4]  The Court thus has no basis for determining

whether these individuals are similarly situated to Plaintiff in all material respects.  Even

assuming they are not, however, Plaintiff fairly characterizes the elimination of her

unique position in the company as more akin to a "mini-RIF" than a regular RIF.  (Doc.

35, at 4 (citing *Mallett v. Board of Educ., City of Chicago*, No. 04 C 3296, 2005 WL

1563227 (N.D. Ill. July 5, 2005)).  In a mini-RIF, "the fired employee's duties are

absorbed by other workers and the employee was replaced, not eliminated." *Michas v.*

*Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 693 (7th Cir. 2000) (internal quotations

omitted).  An employee may thus establish the fourth prong of her prima facie case by

'showing simply that . . . [her] responsibilities were absorbed by employees not in the

protected class.'"  *Mallett*, 2005 WL 1563227, at *7 (quoting *Ritter v. Hill 'N Dale Farm,*

*Inc.*, 231 F.3d 1039, 1043 (7th Cir. 2000)).  *See also Petts v. Rockledge Furniture LLC*,

534 F.3d 715, 725 (7th Cir. 2008) ("[T]he determinative factor in deciding whether the

---

[4]     As noted earlier, the Court assumes for purposes of this motion that the individuals are
under the age of 40 and substantially younger than Plaintiff.

mini-RIF variation applies is whether the discharged employee's duties were absorbed by an existing employee or eliminated, not the number of employees let go.").

Here, Mettler concedes that after the RIF, he instructed the two customer service representatives to report directly to him for at least some period of time. (Doc. 26 ¶ 28; Mettler Aff., Doc. 27, Ex. A, ¶ 14). Mettler does not describe which of Plaintiff's other duties he specifically took over, but they likely involved supervisory tasks that could not be performed by lower-level customer service representatives. *See Knowles v. Trans Union LLC*, No. 03 C 4952, 2005 WL 3159363, at *10 (N.D. Ill. Nov. 21, 2005) (plaintiff "must show that her duties, at the very least, were absorbed *mostly* by employees not in her protected class.") (emphasis in original). Defendant's contrary assertion that "many of [Plaintiff's supervisory] duties presumably disappeared" is conclusory and unsupported by any evidence. (Doc. 49, at 7). On these facts, Plaintiff has satisfied her burden of setting forth a prima facie case of age discrimination.

## 2.    Pretext

Defendant has articulated a legitimate, nondiscriminatory reason for Plaintiff's discharge, namely, the economic downturn requiring a reduction in force. Plaintiff must therefore demonstrate that the reason is a pretext, meaning "a dishonest explanation, a lie rather than an oddity or an error." *Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 479 (7th Cir. 2010) (quoting *Bodenstab v. County of Cook*, 569 F.3d 651, 657 (7th Cir. 2009)). She may do this through evidence showing "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate h[er] discharge, *or* (3) that they were insufficient to motivate discharge." *Silverman*, 637 F.3d at 738

(quoting *Meching v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir. 1988)) (emphasis in original).

Plaintiff identifies three main facts that she says demonstrate her discharge in the RIF was a pretext for age discrimination: (1) Stark stated that she thought Plaintiff was "overcompensated," which is a proxy term for age discrimination; (2) Defendant treated younger, less qualified employees more favorably both before and after the RIF; and (3) immediately after the RIF, Mettler and Holley advertised for a new customer service supervisor and extended an offer to a young man from Wisconsin. The Court considers each in turn.

### a. Stark's Alleged Comments about Overcompensation

Plaintiff first finds evidence of pretext in the comments Stark allegedly made to Hildebrandt about Plaintiff being overpaid. According to Plaintiff, Hildebrandt told Plaintiff that Stark had told him on "numerous occasions" that she thought Plaintiff was "overcompensated compared to the other customer service managers within the organization." (Cole Dep., Ex. 43, at 32-33). Defendant argues that this constitutes inadmissible double hearsay: Stark's alleged statements to Hildebrandt are the first level of hearsay, and Hildebrandt's statements to Plaintiff are the second level. *MMG Fin. Corp. v. Midwest Amusements Park, LLC*, 630 F.3d 651, 656 (7th Cir. 2011) ("A party may not rely on inadmissible hearsay to avoid summary judgment."). Hearsay is an out-of-court statement offered into evidence "to prove the truth of the matter asserted in the statement." *Smith v. Bray*, 681 F.3d 888, 902 (7th Cir. 2012). A statement is not hearsay if it constitutes an admission under Federal Rule of Evidence 801(d)(2), or if it

is being offered for some other purpose besides its truth, such as knowledge or state of mind.  *See, e.g., Fenje v. Feld*, 301 F. Supp. 2d 781, 811 (N.D. Ill. 2003).

The Court agrees with Plaintiff that Stark's statements to Hildebrandt are not hearsay because they constitute admissions of a party opponent.  Stark holds a management position with Paslode and was directly involved in the decision to discharge her.  (Stark Dep., Doc. 49-2, Ex. 6, at 93).  *See also Stephens v. Erickson*, 569 F.3d 779, 793 (7th Cir. 2009) ("For an agent's statement regarding an employment action to constitute an admission, . . . her duties must encompass some responsibility related to 'the decisionmaking process affecting the employment action.'") (quoting *Simple v. Walgreen Co.*, 511 F.3d 668, 672 (7th Cir. 2007)).  In addition, if Hildebrandt were to testify as to what Stark said to him (that Plaintiff is overcompensated), this would be offered not for its truth but to show Stark's state of mind and motivation for discharging Plaintiff: her *belief* that Plaintiff was overcompensated.  Unfortunately for Plaintiff, Hildebrandt's affidavit says nothing about Stark making such alleged statements.

Lacking this, Plaintiff tries to prove what Stark said through her own testimony of what Hildebrandt told her concerning Stark's statements.  Since Hildebrandt was Plaintiff's supervisor at the time, his statements appear to be admissions.  If not, they are barred by the hearsay rule because, if Plaintiff were to testify as to what Hildebrandt said to her (Stark *told me* Plaintiff was overcompensated), this would be offered for its truth: to prove Stark in fact told this to Hildebrandt.  *See Smith*, 681 F.3d at 902 (statements were hearsay where the plaintiff Smith sought to "use them to prove that . . . Bianchetta told [defendant] Bray that Smith had retained a lawyer.").

Regardless, Plaintiff has other evidence of Stark's alleged statements that is admissible. Brewer's affidavit asserts that Stark "discussed in [his] presence [her] concerns about [Plaintiff's] relatively high salary." (Brewer Aff., Doc. 35-13, ¶ 5). Stark's alleged comments to Brewer are admissions and, thus, not hearsay. Brewer is light on details regarding the dates and number of conversations he had with Stark (for example, he was able to testify only generally that he had between three and ten such conversations from 2004 until Plaintiff's termination). (Brewer Dep., Doc. 49-1, at 124-25). In addition, Brewer may be biased against Paslode since he has his own discrimination claim pending against the company. (Brewer Aff., Doc. 35-13, ¶ 8). Contrary to Defendant's assertion, however, this does not create a problem of foundation. (Doc. 50 ¶ 5). *See, e.g., United States v. Penaloza*, 648 F.3d 539, 547 (7th Cir. 2011) (quoting *A.I. Credit Corp. v. Legion Ins. Co.*, 265 F.3d 630, 637-38 (7th Cir. 2001)) ("[N]o rule of evidence requires a 'foundation'; 'foundation' is simply a loose term for preliminary questions designed to establish that evidence is admissible."). Since there is no question that Brewer has personal knowledge of his own conversations with Stark, any concerns about the veracity of his testimony go to its weight, and not its admissibility. *See Dalton v. Battaglia*, 402 F.3d 729, 735 (7th Cir. 2005) ("[A] witness's potential self-interest in testifying about matters for which he or she has direct knowledge goes to the weight and credibility of the testimony, not to its admissibility."); *Cobra Capital LLC v. LaSalle Bank Corp.*, 455 F. Supp. 2d 815, 817-18 (N.D. Ill. 2006) (declaration was not lacking in foundation where it was "based on personal knowledge as a result of [the declarant's] direct involvement in the events in question.").

Defendant responds that Stark's alleged comments are irrelevant in any event because they are not evidence of age bias. (Doc. 49, at 9). Accepting Plaintiff's version of events as true, Stark approved the decision to discharge Plaintiff because she thought Plaintiff was overpaid. In fact, Stark even went so far as to force Hildebrandt to re-write Plaintiff's mid-2007 review to reflect dissatisfaction with her performance so that she would receive a smaller raise that year. (Hildebrandt Aff., Doc. 35-12, ¶ 5). The problem for Plaintiff is that "[a]n employment decision based on compensation level . . . does not violate the ADEA." *Knowles v. United Healthcare Servs., Inc.*, No. 05 C 1613, 2006 WL 1430212, at *9 (N.D. Ill. May 19, 2006) (citing *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1126 (7th Cir. 1994)). Indeed, the Supreme Court has stated that "[b]ecause age and . . . [compensation levels] are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on . . . compensation level is necessarily 'age based.'" *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993). For wage discrimination to constitute age discrimination, wage must "depend[] directly on age, so that the use of one is a pretext for the other." *Anderson*, 13 F.3d at 1125-26 (quoting *Metz v. Transit Mix, Inc.*, 828 F.2d 1202, 1212 (7th Cir. 1987) (Easterbrook, J., dissenting)).

Plaintiff's only evidence of a link between wage and age is Brewer's testimony that "it would not be possible for a young customer service employee to earn as much as Plaintiff." (Doc. 56-1, at 8 (citing Brewer Dep., at 199-201)). Plaintiff has not attached these deposition pages to her memoranda or provided any context for the statement. More importantly, there is no explanation in the record as to why a younger worker who has spent her entire career with Paslode could not be earning a higher

salary than a newly-hired older worker. *Anderson*, 13 F.3d at 1126. In fact, it appears that Paslode's compensation structure is such that the longer an employee works for the company and performs well, the higher a salary she will receive, regardless of her age. (Doc. 50 ¶ 7). As the Seventh Circuit has stated, "high covariance [between salary and age] is not sufficient." *Anderson*, 13 F.3d at 1126. On the facts presented, Stark's alleged assertion that Plaintiff was overpaid is not evidence that she (or anyone else at Paslode) sought to fire Plaintiff because of her age.

### b. Younger Employees Retained in the RIF or Hired Shortly Thereafter

Plaintiff next argues that Paslode's explanation for her discharge is not worthy of credence because the company treated younger employees better than it treated her, both before and after the RIF. (Doc. 35, at 5-6). She first claims that despite Holley's assertion that Paslode has a practice of not "put[ting] people in lesser jobs than their current level," (Holley Dep., Doc. 44, at 117), the company found other positions for three employees who were slated for termination in the RIF. Plaintiff does not expressly identify these individuals in her memoranda, but from the fact statements it appears that she means the following: (1) Jim Boesen (born 1948); (2) Eula Hash (born March 16, 1955); and (3) Jimmy Moore. (Doc. 34, Add'l Facts, ¶ 29). None of these individuals is a proper comparator.

It is well-established that the ADEA "does not mandate that employers establish an interdepartmental transfer program during the course of a RIF." *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 919 (7th Cir. 2000) (internal quotations omitted). At the same time, "an employer implementing a RIF may not favor younger employees over older ones by finding new positions only for younger employees." *Id.* (internal

quotations omitted). Here, there is no evidence that Boesen was slated for layoff in the RIF, and the evidence as to Hash is at best ambiguous (Brewer testified that Hash "was being considered" for the RIF but he never saw her name on the discharge list).[5] (Brewer Dep., Doc. 55, Ex. 1, at 148-49). Moreover, even assuming Paslode intended to fire both individuals but then found them new jobs instead, Plaintiff cannot reasonably argue that this constitutes evidence of age discrimination. Boesen is some seven years *older* than Plaintiff, and Hash is only two months younger than her.

As for Moore, the evidence reflects that he worked as a retail sales representative, not a customer service representative, and he applied for and secured a new sales position in Boston with a different business division. (Doc. 49, at 8; Doc. 30, Ex. K, at Ex. A, p. 2). Plaintiff has provided no evidence that Mettler, Stark, Holley or anyone else at Paslode arranged this outcome or otherwise "favored" him due to his younger age. It is true that Stark refused to interview Plaintiff for the ultimately-abandoned National Customer Service Manager position around the time of the RIF, but there is no competent evidence that she instead interviewed or sought younger employees for the job.[6]

---

[5] Holley submitted an affidavit stating that "[t]o [her] knowledge, neither Eula Hash nor Jim Boesen (nor their positions) were slated for elimination in the RIF that affected Plaintiff's position." (Doc. 49-2, Ex. 3).

[6] In response to Defendant's Statement of Facts, Plaintiff claims that Paslode extended an offer to "another individual." (Doc. 34 ¶ 36). She cites to testimony from Holley indicating that Paslode offered a job to "Ms. Ford," (Holley Dep., Doc. 45, at 99-100), but the transcript does not reveal how old Ms. Ford is, or provide a complete picture as to the circumstances surrounding her job offer. Given Plaintiff's failure to mention Ms. Ford or to develop this argument in any manner in her memoranda, the Court declines to construe it as evidence of age discrimination. *See Coleman v. Hardy*, 690 F.3d 811, 818-19 (7th Cir. 2012) ("Even if a party mentioned evidence relating to [an] argument . . ., if the argument itself was not adequately developed, it is still waived."); *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 702 (7th Cir. 2010) ("Judges are not like pigs, hunting for truffles buried in [the record].") (internal quotations omitted); *Pedroza v. United States*, No. 12 C 3843, 12 C 4335, 2013 WL 157834, at *7 (N.D Ill.

Taking a different approach, Plaintiff finds it significant that "after the RIF, Defendant made a temporary customer service employee Linda Gray permanent and hired a Christian Kwasigroch." (Doc. 35, at 4). Paslode's decision to make Gray, who is barely three years younger than Plaintiff and well within the protected class, a permanent employee sometime in 2008 is hardly evidence of age discrimination. (Holley Dep., Doc. 45, at 22). *See La Montagne v. American Convenience Prods., Inc.*, 750 F.2d 1405, 1413 (7th Cir. 1984) (individual who was four years "younger" than the plaintiff was "too close in age . . . to be the first choice when youth is a prime desideratum."). Kwasigroch is presumably much younger than Plaintiff, but Paslode did not hire him until some two or three years after the RIF. This is too remote in time to support an inference of age discrimination, particularly in the absence of any evidence that Paslode declined to interview or hire older workers who also applied for the position.

Plaintiff next objects to Paslode's decision to retain certain customer service employees in positions that she claims she was "better qualified to fill." (Doc. 35, at 4). Plaintiff concedes that she held a supervisory role, but says that her duties included a variety of ordinary customer service tasks such as answering phones and placing orders. (*Id.* at 6). Essentially, Plaintiff argues that Paslode should have demoted her to a lesser customer service position rather than firing her in the RIF simply because she was capable of doing that work. (*Id.*). Courts, however, "are not 'superpersonnel department[s]' charged with determining best business practices." *Stockwell v. City of Harvey*, 597 F.3d 895, 902 (7th Cir. 2010). "The main inquiry in determining pretext is

Jan. 14, 2013) ("Arguments that are not adequately developed or supported are waived.") (internal quotations omitted).

whether the employer 'honestly acted' on the stated reason rather than 'whether the reason for the [adverse employment action] was a correct business judgment." *Atanus v. Perry*, 520 F.3d 662, 674 (7th Cir. 2008). Plaintiff may believe that it was unwise for Paslode to forego her expertise in favor of less-capable employees, but the company's business decision to do so is not evidence that her discharge was a pretext for age discrimination. *Stockwell*, 597 F.3d at 902 ("[W]e must remember that, even if the business decision was unreasonable, pretext does not exist if the decisionmaker honestly believed the nondiscriminatory reason."). Notably, Paslode retained customer service representative Huff-Chanath, who is less than a year and a half younger than Plaintiff.

Plaintiff thus returns to her argument that Mettler absorbed her duties. (Doc. 35, at 7). As one court recently noted, "an employer's decision in a period of economic downturn to let one employee go and to divide that employee's duties among other existing employees plainly poses a much greater hurdle for a pretext argument than a decision to hire a younger person to supplant an older employee." *Hansen v. Crown Golf Properties L.P.*, 826 F. Supp. 2d 1118, 1121 (N.D. Ill. 2011). Here, Plaintiff maintains there was no economic downturn and, thus, no basis for Mettler to assume her job duties. Defendant vehemently denies this, but Stark did testify at her deposition that ITW was "doing okay" in late 2007, and that Paslode did not implement the restructuring due to budgetary issues, or to save salary or benefit costs. Rather, the RIF "was around restructuring the business [with] some new goals around profit and growth." (Stark Dep., Doc. 44, at 12-13). Defendant insists that "[w]hat Boutelle and others called cost-cutting, Stark called reorganizing to drive 'profit and growth' – i.e., the

same thing." (Doc. 49, at 12 n.12). Perhaps, but a jury must determine how to weigh and interpret Stark's testimony, particularly in light of Plaintiff's evidence, discussed below, that Paslode tried to hire a new customer service manager soon after firing her. On these facts, summary judgment is not appropriate.

### c. The New Supervisory Position

Plaintiff's strongest evidence of pretext is Brewer's testimony that Mettler never intended to eliminate her position. In his affidavit, Brewer states that Mettler approached him immediately after the RIF and asked to post a customer service supervisory job. Brewer told Mettler this was not feasible, but approximately one week later, Mettler and Holley decided to advertise for a customer service employee, with the understanding that the individual hired would then be promoted to supervisor. Brewer says Paslode even extended an offer to a young man from Wisconsin, who declined. (Brewer Aff., Doc. 35-13, ¶ 6).

Defendant urges the Court to strike and disregard Brewer's statements about a new position because they are lacking in foundation and, therefore, inadmissible.[7] The Court disagrees. Defendant is correct that Brewer has no recollection of when exactly Mettler approached him about the position, the title of the alleged position, or the name of the "young guy" who allegedly received the offer. (Brewer Dep., Doc. 49-1, at 152-53, 172, 177, 183). For reasons discussed earlier, however, these factual gaps affect the weight of Brewer's testimony, not its admissibility. *See Penaloza*, 648 F.3d at 547. There is no dispute that Brewer has personal knowledge of his conversations with

---

[7] Defendant does not dispute that Mettler's statements are admissions and, thus, not hearsay. *Stephens*, 569 F.3d at 793.

Mettler and Holley, and the Court sees no basis for striking his testimony from the record.

Defendant claims that Brewer's statements are still not evidence of pretext because Paslode never actually hired anyone into the alleged new position. In addition, Brewer testified at his deposition that the position was not strictly a customer service job, but was a combined customer service/warehousing job. (Brewer Dep., Doc. 49-1, at 173-74). The Court does not see how these facts advance Defendant's argument. As noted, Plaintiff has produced evidence that Mettler wanted to post a new customer service supervisory position shortly after she was fired. (Brewer Aff., Doc. 35-13, ¶ 6). Perhaps owing to Brewer's objection, the position as ultimately posted ended up including a warehousing element. (Brewer Dep., Doc. 49-1, at 173-74). This in no way proves that Mettler genuinely intended to eliminate the customer service manager position when he selected Plaintiff for layoff. In addition, the fact that the younger person who was offered the job declined to take it is irrelevant. *See, e.g., Collier v. Budd Co.*, 66 F.3d 886, 890 (7th Cir. 1995) ("If Collier could prove that Budd fired him, intending (but failing) to replace him with a younger employee, we do not see how this action raises any less suspicion of an impermissible motive than if, when Budd fired Collier, it intended to replace him with a younger person and then succeeded in doing so."). It is worth noting here that Brewer testified that he personally does not believe that Paslode included Plaintiff in the RIF because of her age. (Doc. 49-1, at 152). This is certainly not helpful for Plaintiff's case, but it does not change the fact that she has presented evidence suggesting that Paslode's stated reason for her discharge was a lie, and the company tried to replace her with a younger worker.

In a related argument, Plaintiff notes that while working towards the RIF, Paslode was simultaneously considering creating a new National Customer Service Manager position and hiring two new customer service representatives. (Doc. 35, at 1, 10). Defendant stresses that the company ultimately abandoned the plan, but a jury could fairly conclude that Paslode's desire to create a new National Customer Service Manager, combined with Mettler's alleged attempt to hire a new customer service supervisor, constitutes evidence that the company never intended to eliminate Plaintiff's position, such that her discharge in the RIF was a pretext to get rid of her for an improper reason, i.e., her age.

In sum, Plaintiff has raised questions of fact as to whether Paslode was suffering an economic downturn in 2007, and whether it genuinely planned to eliminate her position as a result. Defendant's motion for summary judgment on Plaintiff's age discrimination claim is therefore denied.

## B. Retaliation Claim

As with her age discrimination claim, Plaintiff can prove retaliation using either the direct or indirect method. Under the direct method, Plaintiff must show: "(1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the two." *Smith v. Lafayette Bank & Trust Co.*, 674 F.3d 655, 657 (7th Cir. 2012) (ADEA). *See also Leonard v. Eastern Illinois Univ.*, 606 F.3d 428, 431 (7th Cir. 2010) (Title VII).[8] A causal connection can be established with direct evidence, "something akin to an admission by the employer." *Coleman v. Donahoe*, 667 F.3d 835, 861 (7th Cir. 2012) (quoting *O'Leary v. Accretive*

---

[8] The analysis for retaliation claims is the same under both the ADEA and Title VII. The Court thus cites relevant case law interchangeably.

*Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011)).  Alternatively, Plaintiff may present a "'convincing mosaic of circumstantial evidence' that would permit the same inference without the employer's admission."  *Id.* (quoting *Rhodes v. Illinois Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004)).

To establish a prima facie case of retaliation under the indirect method, Plaintiff must satisfy the first two elements of the direct case and further show that (3) she was meeting the employer's legitimate expectations; and (4) she was treated less favorably than a similarly situated employee who did not engage in statutorily protected activity. *Smith*, 674 F.3d at 657-58; *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 838 (7th Cir. 2009).  If Plaintiff passes this initial hurdle, then the burden shifts to Paslode to articulate a nondiscriminatory reason for its action.  The burden then shifts back to Plaintiff to show that this reason is pretextual.  *Scruggs*, 587 F.3d at 838.

It is not entirely clear which method of proof Plaintiff relies upon here, but it appears that she seeks to prove a direct causal connection between her complaints and her discharge, using a "convincing mosaic" of circumstantial evidence.  (Doc. 35, at 11, 12) (citing *Coleman*, 667 F.3d at 860, 862).  The Court tailors its analysis accordingly.

### 1.    Protected Activity

There is no dispute that Plaintiff engaged in statutorily protected activity by filing an EEOC charge of discrimination on October 18, 2007.  *Feldman v. Olin Corp.*, 692 F.3d 748, 756 (7th Cir. 2012).  Less clear is whether she also made oral complaints of discrimination in or around April 2007.  Plaintiff cannot recall any details of those complaints, or identify to whom she made them.  Instead, she merely guesses that she "probably said . . . I see people who have been here many years and have contributed

to the success of this organization who are being pushed aside because of age for younger people." (Cole Dep., Doc. 43, at 246, 249). For purposes of summary judgment, such "mere speculation" is insufficient to show that Plaintiff complained of discrimination to the relevant decisionmakers. *Lewis v. Mills*, 677 F.3d 324, 331 (7th Cir. 2012).

Plaintiff did produce handwritten notes indicating that she spoke to Hildebrandt about a "hostile workplace" relating to "age, race." (Doc. 35-5). Tellingly, however, Hildebrandt does not say anything about such a claim in his affidavit, even though he submitted it at Plaintiff's request specifically to defeat summary judgment. (Hildebrandt Aff., Doc. 35-12). Nor does he state that he conveyed the alleged complaint to Mettler, Stark or anyone else at Paslode. The only other evidence of an April 2007 complaint is Brewer's affidavit that Plaintiff "raised concerns internally of what she believed to be discrimination in the workplace." (Brewer Aff. Doc, 35-13, ¶ 3). Yet Brewer made it clear at his deposition that the only complaint of "discrimination" Plaintiff made to him was that Mettler would not speak to her. (Brewer Dep., Doc. 49-1, at 89). Brewer himself did not view this as discrimination, so he did not frame it as such when he relayed the complaint to Holley and discussed it with Mettler. (*Id.* at 93, 96, 100). *See Durkin v. City of Chicago*, 341 F.3d 606, 615 (7th Cir. 2003) ("An employer cannot retaliate if there is nothing for it to retaliate against"; vague complaints about matters other than harassment did not amount to protected activity).

On the record presented, the Court finds that Plaintiff engaged in protected activity by filing her October 18, 2007 charge of discrimination, but there is insufficient evidence of a complaint of discrimination in April 2007 to survive summary judgment.

## 2. Convincing Mosaic

Since Plaintiff's termination is unquestionably an adverse employment action, *Barton*, 662 F.3d at 454-55, the Court proceeds with step three of the analysis. The Seventh Circuit has identified "three categories of circumstantial evidence available to a plaintiff using the 'convincing mosaic' approach." *Coleman*, 667 F.3d at 860. The first is "suspicious timing, ambiguous statements oral or written, . . . and other bits and pieces from which an inference of [retaliatory] intent might be drawn." *Id.* (quoting *Silverman*, 637 F.3d at 734). The second is "evidence, but not necessarily rigorous statistical evidence, that similarly situated employees were treated differently." *Id.* (quoting *Volovsek v. Wisconsin Dep't of Agriculture, Trade & Consumer Protection*, 344 F.3d 680, 689 (7th Cir. 2003)). Finally, a plaintiff may produce "evidence that the employer offered a pretextual reason for an adverse employment action." *Id.* (quoting *Dickerson v. Board of Trustees of Community College Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011)).

Defendant insists that Plaintiff cannot establish a convincing mosaic of retaliation under any method because Mettler and Stark decided to discharge her in August 2007, long before she filed the EEOC charge. (Doc. 25, at 13; Doc. 49, at 12-13). There is indeed evidence that Defendant intended to fire Plaintiff as early as August 2007. (Doc. 30, Ex. I). And on October 1, 2007, Holley sent Michael Hamblen a list of 17 employees slated for layoff, including Plaintiff. (Doc. 51-2). Plaintiff stresses that Stark did not give her final approval for the RIF until sometime after Plaintiff filed her EEOC charge on October 18, 2007. (Doc. 35, at 12). Yet such "suspicious timing alone is insufficient to support a . . . retaliation claim." *Leonard*, 606 F.3d at 433 (internal quotations omitted).

Here, there is no genuine dispute that every employee on the October 1 list was ultimately discharged in November 2007. Plaintiff thus cannot demonstrate that employees who did not complain of discrimination survived the RIF. Nor has she created a reasonable inference that Stark or anyone else at Paslode selected her for layoff because she filed an EEOC charge. On these facts, Defendant's motion for summary judgment on Plaintiff's retaliation claim must be granted.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment (Doc. 24) is granted in part and denied in part. Status hearing set for February 28, 2013 at 9:30 a.m. to set dates for trial and the final pretrial order.


ENTER:

Dated: February 14, 2013

SHEILA FINNEGAN
United States Magistrate Judge